By the Court :
The evidence in this ease is not sufficient to enable us to make a final decree. The preliminary questions, however, on which the final decree must principally depend may now be stated:
1. It appears from the evidence, and the points conceded by the parties, that the entry of McClanahan, under which’ the complainant claims, was made agreeably to law ; neither the sufficiency nor the notoriety of its calls has been disputed. Brush creek was generally known. The poplar marked J. B., 1791, called for as a beginning, is well described. The side of the creek on which it stands, its distance from the mouth of the creek, and its situation on a run being given, a subsequent locator, by reasonable diligence might find it. And the surveyor testifies that in tracing the survey he found all the corners as described in the complainant’s deed, which appears to be a transcript from the patent.
2'. As this entry was made in 1792, and the entry of Churchill Jones was not carried into grant till 1799, it is the opinion of the court that it covered and appropriated all the land embraced in its calls, not included in the calls of Jones entry. The fact that *7 the survey of Jones was made before the entry of McClanahan, does not affect the ease, as the entry was made long before the passing of the statute that prohibits locations on lands previously patented or surveyed. We admit that entries may be amended, but not that a survey is necessarily such an amendment of an entry as will appropriate land clearly without the calls of that entry, in opposition to a subsequent location. Were *this the case lands might be appropriated by a survey without a previous entry, notwithstanding the express requirement of the statute of 1779. It has, however, been settled by the Supreme Court of the United States in the case of Wilson v. Mason, that a survey not founded on an entry is a void act, and constitutes no title whatever; and that consequently the land so surveyed remains vacant and liable to be appropriated by any person holding a land warrant. The principle here decided seems to settle this question; for if an entry must precede a survey, the entry must cover the land surveyed, and every part of it, or a portion of it, would be appropriated without an entry. If any portion of the land, however small, may be legally appropriated without an entry, wo see no reason why an entire tract may not *be taken up in the same way. If the holder of a warrant may enter one thousand acres, and in surveying vary so far from his entry as to include one hundred acres not covered by it, he might, on the same principle, take one acre within and nine hundred and ninety-nine acres without its calls, or, as was the case in Wilson v. Mason, enter on one watercourse and survey on another. >
The terms used in the entry of Churchill Jones are somewhat ambiguous ; but we believe the true construction of it will give a base on the Ohio of five hundred poles, including the fifty poles above the creek. The mouth of the creek appears to be adopted merely as an object from which to ascertain the beginning corner, which is a point fifty polos above the mouth.
The words of the entry are : “ Beginning at the mouth of Brush, or Eighteen Mile creek, running up the river fifty poles; thence from the beginning down the river five hundred poles, when reduced to a straight line.” The word “thence” must refer to the termination of the fifty poles, and consequently the five hundred poles called for must commence at that point. The most natural construction of the language is, running up the river fifty poles, and from thence, as a beginning, down the river fUe hundred *8 poles, etc. The same result will be had by a simple transposition of the words thence and from.
On the whole, we are of opinion that the true construction of Jones’ entry requires it to be surveyed by beginning *at a point on the bank of the Ohio fifty poles on a straight line above the mouth of the creek, and by running from that point, as a beginning corner, down the river with its meanders, to a point on the bank of the Ohio five hundred poles on a straight line from the beginning course, and from those points at right angles from the base line so far as to include the quantity of one thousand acres, the opposite lines being equal and parallel.
It is contended by the complainant that the survey heretofore made on this entry, extends further back from the river than the calls, as now construed, justify, and that it has been run so as to include a part of the land contained in his entry. On this point it is the opinion of the court that so much, if any, of the land included within the calls of McOlanahan’s entry and survey as has been covered by the survey and patent of Jones, but not included within the calls of his entry as now expounded, has been fraudulently recovered from the complainant, and that in equity and good conscience the defendant ought to release the legal title he has acquired to it by obtaining the elder patent. But as no survey has been made of Jones’ entry, on the principles here laid down, whereby the interference, if any, can be ascertained, it is ordered that the surveyor of Adams county execute a survey of that entry agreeably to the directions herein given, and return the same to the clerk of this court.